23CA0957 Peo v Phillips 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0957
Fremont County District Court No. 22CR53
Honorable Kaitlin Turner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Zeth Phillips,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE FREYRE
Kuhn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Philip J. Weiser, Attorney General, Erin K. Grundy, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Leah Scaduto, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 Defendant, Zeth Phillips, appeals his conviction for second degree assault of a detention center employee. He challenges his conviction on three grounds and contends that the trial court erred by (1) admitting expert testimony disguised as lay opinion; (2) admitting expert testimony that usurped the jury's role as fact finder; and (3) not providing the jury with a limiting instruction regarding his prior conviction. We affirm.

## I.    Background

¶ 2 While incarcerated at Centennial Correctional Facility (CCF), officers placed Phillips in administrative detention and brought him to CCF's intake center for processing. During this detention, Sergeant Robert Morris informed Phillips that he would be strip-searched — a routine practice used any time an offender is taken to the intake center that ensures "there's no contraband that [inmates] can utilize to harm themselves and others." Phillips declined to comply with the search, despite having no right to do so as an inmate. Pursuant to CCF policy, Morris and Officer Tony Che then conducted a "noncompliant strip search," which involved placing Phillips on the ground, cutting off his clothes, and using "force techniques" to visually inspect him. During the search, Phillips

1

spat at the officers multiple times and in one instance spat on Morris' face. To compel compliance after Phillips spat on Morris, the officers applied pressure to Phillips' neck. Morris' body camera recorded the incident.

¶ 3    The prosecution charged Phillips with second degree assault by bodily fluid on a detention center employee. § 18-3-203(1)(f.5)(I), C.R.S. 2025. The jury viewed the body camera footage at trial and heard testimony from Morris, Che, and Tamara Gold, a correctional officer who reviewed the footage. Through counsel, Phillips argued that the officers placed him in an unlawful "chokehold" and he acted in self-defense when he spat at them. The jury convicted Phillips as charged, and the trial court sentenced him to four years in the Department of Corrections' custody, running concurrently with his existing sentence.

II.    Expert Testimony

A.    Additional Background

¶ 4    During opening statements, the prosecution explained that Morris and Gold would testify that the pressure applied to Phillips' neck was "an appropriate method to control an inmate." Defense counsel also focused on the pressure points in Phillips' neck during

his opening statement and remarked that "[t]he hypoglossal pressure point, also known as a chokehold, has been expressly prohibited for use by law enforcement in the State of Colorado." Defense counsel argued that Morris and Che had placed Phillips in this unlawful chokehold, and thus, Phillips acted in self-defense when spitting.

¶ 5    Morris testified that as a correctional officer, he is trained in defensive tactics, first aid, and emergency response. He also testified that he is a defensive tactics instructor. The prosecutor then played the body camera footage and intermittently paused the video to question Morris. Morris explained that *after* Phillips spat in his face, he "applied touch pressure to the offender's mandibular angle nerve" to gain compliance. He stated that he was trained in this technique "through the defensive tactics curriculum" and explained that it does not impede the windpipe or carotid arteries as a chokehold would. During cross-examination, defense counsel further developed this testimony and asked Morris about the locations of the hypoglossal nerve, mandibular angle nerve, and carotid arteries.

¶ 6     Che then testified about his involvement in the incident and his training in defense tactics. Che stated that when Phillips was initially detained and before officers brought him into the intake area, he performed a "c-clamp method under [Phillips'] jaw and then a hypoglossal pressure point under his jawline." Che explained that these tactics do not put pressure on the windpipe or carotid arteries. Congruent with Morris' testimony, Che stated that they used a "mandibular angle" hold on Phillips after he spat on Morris.

¶ 7     Finally, Gold — a supervising correctional officer trained in use of force and first aid — testified about her review of the body camera footage. She opined that the strip search was conducted "in line with procedure and it was conducted in a professional manner." She explained that she "observed staff applying pressure points [around the head and neck]" and that "it was conducted in an appropriate manner." When the prosecutor asked Gold if it appeared to her that the officers had applied a chokehold, she answered, "No."

¶ 8     Phillips did not object to Morris', Che's, or Gold's testimony and did not argue at trial that Gold had usurped the jury's role as

4

fact finder. Each contention is therefore unpreserved, and we review for plain error. *See People v. Conyac*, 2014 COA 8M, ¶ 53. While we agree that these witnesses offered some expert testimony under the guise of lay opinion, we conclude that the error was neither obvious nor substantial. We further conclude that Gold did not impermissibly usurp the jury's role.

## B. Standard of Review

¶ 9 Ordinarily, we review a trial court's evidentiary ruling concerning lay testimony for an abuse of discretion. *Id.* However, we apply plain error review to unpreserved issues. *Id.* Under this standard, a defendant bears the burden of establishing that when the error arose, "it was so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of objection." *Id.* at ¶ 54. The defendant must also establish that the error was substantial, such that it "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the conviction." *Id.*

## C.    Applicable Law and Analysis

### 1.    Expert Testimony Disguised as Lay Opinion

¶ 10    Witnesses may only testify about matters to which they have personal knowledge.  CRE 602.  Lay witnesses may offer opinions that are based on their own perceptions; helpful to the jury; and not based on scientific, technical, or specialized knowledge.  CRE 701.  Expert witnesses qualified by knowledge, skill, experience, or education may testify to matters of specialized knowledge if such testimony would be helpful to the jury.  CRE 702.  "Whether a witness's testimony is lay or expert depends on the facts and surrounding circumstances of the case and 'requires a case-by-case analysis of both the witness and the witness's opinion.'"  *Venalonzo v. People*, 2017 CO 9, ¶ 17 (citation omitted).  Courts "look to the basis for the opinion" to determine when lay opinion crosses into expert testimony.  *Id.* at ¶ 16.

¶ 11    We agree with Phillips that Morris, Che, and Gold offered expert testimony under the guise of lay opinion.  Morris and Che's knowledge concerning pressure points, nerves, and the impact certain holds have on the windpipe and carotid arteries came from their defensive tactics training.  A person of ordinary knowledge and

skill does not receive this training and would likely be unfamiliar with pressure point holds and the location of nerves in the neck. Thus, Morris and Che offered expert testimony when they offered opinions based on that knowledge — such as the testimony that applying pressure to the offender's mandibular angle nerve does not impede the windpipe or carotid arteries as a chokehold would. *Cf. People v. Stewart,* 55 P.3d 107, 124 (Colo. 2002) (concluding that a police officer's deductions about a vehicle's direction, position, and speed required specialized training and were therefore expert testimony); *see also People v. Veren,* 140 P.3d 131, 139 (Colo. App. 2005) (holding that the police officer's testimony — that he suspected the defendant of manufacturing methamphetamine because he possessed a large amount of Sudafed — was expert testimony because it required specialized knowledge); *People v. Ramos,* 2017 CO 6, ¶ 9 (holding that an "ordinary citizen" would not have the experience or knowledge to differentiate between "blood cast-off" and "blood transfer," and thus testimony about blood splatter is expert testimony).

¶ 12    Similarly, because an ordinary person likely does not know the difference between a pressure point hold and a chokehold, Gold

offered expert testimony when she opined that the techniques used by Morris and Che did not amount to a chokehold. The trial court should have qualified all three witnesses as experts and therefore erred by admitting their testimony under the guise of lay opinion. *See Stewart,* 55 P.3d at 124; *Veren,* 140 P.3d at 139; *Ramos,* ¶ 9.

¶ 13 However, we conclude that any error in admitting the testimony was neither obvious nor substantial. The Colorado Supreme Court has acknowledged the difficulty in distinguishing between lay and expert opinion in the context of police officer testimony, remarking that "[t]he application of Rule 701 to police officer testimony has generated equal measures of confusion and controversy." *Stewart,* 55 P.3d at 123. Thus, because the inquiry is case-specific and often unclear, the error was not so obvious that the trial court should have avoided it without Phillips' objection. Indeed, it is noteworthy that the testimony drew no objection from defense counsel. *Cf. Domingo-Gomez v. People,* 125 P.3d 1043, 1054 (Colo. 2005) (a reviewing court may consider the lack of defense counsel's objection when evaluating the prejudicial impact of an argument).

¶ 14 And the error was not substantial because the jury saw body camera footage of the incident and could reach its own conclusion about what the video showed, independent of the officers' testimony about the tactics employed in the video. *See People v. Vergari*, 2022 COA 95, ¶ 20. Moreover, the record shows that there was sufficient background disclosed in the record that the trial court could have qualified Morris, Che, and Gold as experts due to their specialized training in defense tactics. Under those circumstances, the jury would have heard the testimony anyway. Accordingly, the court did not plainly err and reversal is not warranted. *See Hagos v. People*, 2012 CO 63, ¶ 14.

### 2. Usurping the Jury's Role as Fact Finder

¶ 15 Phillips also asserts that Gold's testimony usurped the jury's role as fact finder. We disagree. "Testimony in the form of an opinion . . . is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." CRE 704. However, the witness offering such testimony may not usurp the jury's role as fact finder. *People v. McMinn*, 2013 COA 94, ¶ 51. Courts "examine a number of factors when determining whether expert testimony usurped the function of the jury," including whether (1) the

9

testimony was clarified on cross-examination; (2) the testimony expressed an opinion on the applicable law or legal standard; (3) the jury was properly instructed that it may accept or reject the opinion; and (4) the expert opined that the defendant committed the crime. *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011).

¶ 16  Applying these factors, Phillips' argument is unavailing. Although the record shows minimal clarification of Gold's testimony on cross-examination, she merely expressed an opinion on whether the officers complied with CCF policy — *not* whether they complied with an applicable law. Moreover, Gold never opined that Phillips assaulted the officers; rather, she assessed the actions of the officers themselves. And finally, the court instructed the jury that it "may believe all the testimony of a witness, part of it, or none of it." We presume the jury understood and followed this instruction. *See People v. Abdulla*, 2020 COA 109M, ¶ 58 ("[W]e employ the presumption that the jury understands and applies the given instructions unless a contrary showing is made . . . ."). The factors weigh against finding that Gold usurped the jury's role as fact finder; therefore, we discern no reversible error in admitting the testimony. *See id.*

### III.   Limiting Instruction

### A.   Additional Background

¶ 17   The charged offense required the prosecution to prove that Phillips was "lawfully confined in a detention facility." § 18-3-203(1)(f.5)(I).  The parties concede that the prosecution did so through several witnesses and that these witnesses referred to Phillips as an "offender."  Defense counsel also referred to Phillips as "an inmate at Centennial" in his opening statement.  The prosecutor did not introduce evidence related to Phillips' underlying conviction for which he was incarcerated.

¶ 18   Phillips argues that the trial court should have provided the jury with a limiting instruction directing the jurors to disregard his previous conviction — the one for which he was serving his sentence at the time of the incident — when deciding the present case.  Because Phillips did not request this instruction below, the issue is unpreserved.  He contends that the court's failure to sua sponte provide a limiting instruction permitted the jury to consider his propensity for criminality in finding him guilty, thus violating his due process rights.  We are not persuaded.

## B.    Standard of Review

¶ 19    We review the trial court's decision to give or omit a particular instruction for an abuse of discretion.  *People v. Carter*, 2015 COA 24M-2, ¶ 39.  But when the issue is unpreserved, we review for plain error, applying the same legal principles set forth *supra* Part II.B.  "A trial court's failure to give a limiting instruction, sua sponte, does not constitute plain error."  *People v. Crespi*, 155 P.3d 570, 576 (Colo. App. 2006).

## C.    Applicable Law and Analysis

¶ 20    "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."  CRE 404(b)(1).  When evaluating whether evidence of misconduct triggers Rule 404(b), the court determines "if the evidence is intrinsic or extrinsic to the charged offense."  *Rojas v. People*, 2022 CO 8, ¶ 52.  "Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it."  *Id.*  Intrinsic acts are exempt from Rule 404(b) because they are not "other"

crimes or acts — rather, they are inherent to the offense at issue. *Id.*

¶ 21    Section 18-3-203(1)(f.5)(I) requires that a defendant be "lawfully confined in a detention facility" to be guilty of second degree assault by use of bodily fluid.  Thus, Phillips' inmate status — and the fact that he previously committed a crime — is intrinsic evidence that the prosecution had to introduce to prove one of the elements of the charge.  The prosecution proved this element and, in doing so, never mentioned the reason for Phillips' confinement.  Instead, the prosecutor merely referred to him as an "offender" confined in CCF.  Because Phillips' prior conviction is intrinsic, CRE 404(b) is inapplicable.

¶ 22    Generally, "[u]nless a limiting instruction is either required by statute or requested by a party, a trial court has no duty to provide one sua sponte." *Davis v. People*, 2013 CO 57, ¶ 21.  Not only did Phillips fail to request a limiting instruction, but he cites no binding law — and we are aware of none — requiring a trial court to provide the jury with a limiting instruction when the defendant's incarceration status for a prior conviction is an element of the

charged offense.  Thus, the court did not err, let alone err in a manner that was obvious and substantial.

## IV.   Disposition

¶ 23    The judgment is affirmed.

JUDGE KUHN and JUDGE TAUBMAN concur.